UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------- X        NOT FOR PUBLICATION
ARLENE A. CABASSA,

        Plaintiff,

                            **MEMORANDUM & ORDER**

   -against-
                             11-CV-1449 (KAM)

MICHAEL J. ASTRUE, COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.
-------------------------------- X

**MATSUMOTO, United States District Judge:**

        Pursuant to 42 U.S.C. § 405(g), Arlene A. Cabassa

("plaintiff") appeals the final decision of defendant Michael

Astrue, Commissioner of Social Security ("defendant"), which

denied plaintiff's application for Social Security Disability

("SSD") and Supplemental Security Income ("SSI") under Title II

and Title XVI, respectively, of the Social Security Act ("the

Act"). Plaintiff contends that she is disabled within the

meaning of the Act and is thus entitled to receive the

aforementioned benefits. Presently before the court are

defendant's motion for judgment on the pleadings and plaintiff's

cross-motion for judgment on the pleadings. For the reasons

stated below, the court denies the parties' motions and the case

is remanded for further proceedings consistent with this

opinion.

**BACKGROUND**

## I.  Procedural History

Plaintiff applied for SSD on October 10, 2008 and SSI on October 28, 2008, contending that she has been disabled since August 31, 2008.  (ECF No. 15, Administrative Transcript ("Tr.") 13, 84-86, 87-93.)  Plaintiff alleged that she was disabled due to chronic obstructive pulmonary disease ("COPD"), mitral valve prolapse, mild osteoarthritis of the hips, foot fungus, and other issues.  (Tr. 15, 121.)  She also claimed to have leg pain, numbness in her arms, shortness of breath, and occasional syncopal episodes.  (*Id.*)  The Social Security Administration ("SSA") initially denied her application on December 17, 2008. (Tr. 43-52.)

After having her application initially denied by the SSA, plaintiff requested a hearing before an Administrative Law Judge.  (Tr. 53-55.)  The request for a hearing was granted and a hearing was held on February 12, 2010 before ALJ Mark Solomon (the "ALJ").  (Tr. 13, 63-77.)  By a decision dated April 7, 2010, the ALJ found that plaintiff was not disabled.  (Tr. 10-20.)  Specifically, the ALJ found that plaintiff had the Residual Functional Capacity ("RFC")[1] to perform a full range of

---

[1]  "Residual Functional Capacity" is what a person is still capable of doing despite limitations resulting from physical and mental impairments.  20 C.F.R. § 416.945(a).

sedentary work[2] and that her complaints concerning the intensity, persistence, and limiting effects of her symptoms were "not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. 16-17.) The ALJ concluded that plaintiff was able to perform her past work as a receptionist as the job is actually and generally performed. (Tr. 19.)

Plaintiff appealed the ALJ's decision to the Appeals Council on April 30, 2010. (Tr. 8-9.) That appeal was denied on February 1, 2011, and the ALJ's decision became the Commissioner's final determination. (Tr. 1-3.) This appeal followed.

## II.  Non-Medical Facts

Plaintiff was born on March 24, 1950, and was almost sixty years old at the time of her hearing before the ALJ on February 12, 2010. (Tr. 23, 25, 26.) Her highest level of education is the twelfth grade. (Tr. 26.) She also took "a couple classes" in child development. (*Id.*)

---

[2] "Sedentary work is the least rigorous of the five categories of work recognized by the SSA regulations." *Schaal v. Apfel*, 134 F.3d 496, 501 n.6 (2d Cir. 1998). It "generally involves up to two hours of standing or walking and six hours of sitting in an eight-hour work day." *Rosa v. Callahan*, 168 F.3d 72, 78 n.3 (2d Cir. 1999) (quoting *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996)). It also involves "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." 20 C.F.R. § 404.1567(a).

Plaintiff's known work experience includes positions as a receptionist and an assistant housemother in a shelter for unwed mothers. (Tr. 27-28, 122.) First, plaintiff worked as a receptionist for some time prior to 2004, and as discussed below, there is a material factual dispute regarding whether plaintiff worked as a receptionist between 1993 and 2004, as she apparently reported in a Disability Report Form (Tr. 122), or prior to 1992, as she testified at her hearing (Tr. 27-28, 36). As a receptionist, plaintiff reported that her job entailed walking for one hour per day, standing for zero hours per day, and sitting for seven hours per day. (Tr. 122.) The job did not require her to lift more than ten pounds. (*Id.*)

Second, plaintiff worked as a housemother for approximately four years from 2004 to 2008. (Tr. 26-27, 122.) As a housemother, she cared for the children, drove the mothers to appointments, taught the mothers how to be parents, and carried and sent packages. (Tr. 27.) She also climbed stairs and was on her feet a majority of the work day. (*Id.*) Plaintiff left her position as a housemother in November 2008. (Tr. 26.) She reported that she left because she "was put out with the pulmonary doctor for [her] lungs." (Tr. 28.) Plaintiff has not worked since November 2008. (Tr. 26.)

Plaintiff lives with her daughter and son-in-law. (Tr. 30.) She reports that when she does housework, it is

4

limited to "very little at a time."  (Tr. 132.)  Her daughter
helps her cook, drives her places, takes her shopping, and
completes unfinished housework.  (Tr. 131-33, 135.)  Plaintiff
reports that she can get dressed, shower, eat, and use the
toilet by herself, although these activities may make her feel
out of breath and are a struggle.  (Tr. 30-31, 130-33.)
Plaintiff reports that she can go out alone, but that her
"children help with the packages."  (Tr. 32, 132.)  She goes
shopping once a week with her daughter and goes outside of her
home once or twice per day.  (Tr. 132-33.)  With regard to her
daily activities, plaintiff describes that she watches
television everyday, reads occasionally, attends church once a
week, and walks when she is able.  (Tr. 133-34.)  She also
reports talking on the phone and sitting in her daughter's home.
(Tr. 134.)

Plaintiff reports that she can only walk one block
before she is out of breath and that she must rest for half an
hour before continuing to walk.  (Tr. 135.)  At the February 12,
2010 hearing, plaintiff testified that she can only walk half of
a block or a quarter of a block before she has to stop and rest.
(Tr. 35.)  She also testified that she cannot hold her
grandchildren or lift any items and, in her last job, lifting a
five-pound box made her feel out of breath.  (Tr. 33, 36.)

Plaintiff used to be a smoker, however, she reportedly quit in 1992. (Tr. 157, 370, 425.)

## III. Medical Facts

Plaintiff has presented medical records dating back to April 2005. (Tr. 213.) The discussion below addresses plaintiff's testimony regarding her symptoms as well as the medical evidence and opinions in the record.

### A. Plaintiff's Testimony Regarding Her Symptoms

At plaintiff's February 12, 2010 hearing, plaintiff testified that she had an ache in her back, experiences numbness in her arms when relaxing, and becomes out of breath when walking short distances. (Tr. 31-32, 35.) In addition, plaintiff testified that she suffers from syncopal episodes or fainting spells as well as dizziness. (Tr. 33-34.)

### B. Plaintiff's Treating Source[3]

Dr. Dominic A. Pompa has been treating plaintiff apparently since July 30, 2008. (Tr. 591.) His treatment notes regarding plaintiff span one-and-a-half years from July 30, 2008 to January 29, 2010 (*see* Tr. 577-84, 590-91) and contain diagnostic test results for August 2008 (Tr. 585-89, 595-96) (describing elevated cholesterol levels, a low mean platelet

---

[3] A "treating source" includes a claimant's "own physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you." 20 C.F.R. §§ 404.1502, 416.902.

volume, a Vitamin B$_{12}$ deficiency, and average cardiovascular risk), September 2008 (Tr. 594) (chest x-ray showing that, other than a left-sided lung nodule that was unchanged from a prior study and is probably calcified, the lungs are otherwise clear), and October 2008 (Tr. 592-93) (pulmonary function test showing moderately severe obstruction).

Dr. Pompa's treatment notes, however, are handwritten and mostly illegible, and thus the court will reference his summary letter dated January 29, 2010. (Tr. 567, 576.) Dr. Pompa asserts that plaintiff is being treated for COPD, asthma, syncopal episodes, lumbar and cervical radiculophathies, arthritis, peripheral neuropathies, angina, mitral valve prolapse, and extreme fatigue. (*Id.*) He also states that plaintiff is "severely short of breath" and negatively affected by temperature and odors, which aggravate her lung disease. (*Id.*) According to Dr. Pompa, plaintiff has "severe weakness and numbness parasthesias on minimal extension of the lumbar spine," impacting her ability to stand, walk, and sit for short periods of time. (*Id.*) Dr. Pompa writes that plaintiff's numbness in her arms and hands also makes her unable to lift or carry items weighing more than five pounds. (*Id.*)

Plaintiff also saw Dr. Pompa in June 2009 for unrelated issues, such as a bruised eardrum. (Tr. 579-80.)

On January 26, 2010, plaintiff saw Dr. Pompa complaining of a headache. (Tr. 578.) On January 29, 2010, plaintiff saw Dr. Pompa to follow up on chest x-ray results. (Tr. 577.)

## C. Non-Examining Sources

### 1. Dr. W. Wells

Dr. W. Wells, a nonexamining medical consultant, provided an opinion dated December 16, 2008 based solely on his reading of the record. (Tr. 397-401, 448-49.) Through his analysis of the record, he opined that plaintiff retained the RFC to stand and walk for six hours per day and lift 25 pounds frequently and 50 pounds occasionally, but that she should avoid concentrated dust and fumes. (Tr. 448.) To support his RFC finding, Dr. Wells cited the "medical evidence of record." (*Id.*)

### 2. Dr. G. Ewald

Dr. G. Ewald, a State Agency reviewer and nonexamining medical consultant, reviewed the record and provided an opinion dated December 17, 2008 consistent with a medium RFC. (Tr. 442-47, 450-55.) He considered plaintiff's allegations of leg pain, lung pain, and shortness of breath to be "credible, but not to the degree alleged," and concluded that she had the RFC to return to her past relevant work. (Tr. 446.) Specifically, he found that she could occasionally lift up to fifty pounds,

frequently lift up to twenty-five pounds, could stand and/or walk as well as sit with normal breaks for six hours in an eight-hour workday, and that she was unlimited in pushing and/or pulling.  (Tr. 443.)  The only limitations Dr. Ewald found plaintiff to have are related to her asthma.  (Tr. 445.)  He found that she should avoid concentrated exposure to humidity, fumes, odors, gases, poor ventilation, etc.  (*Id.*)

     **D.   Testimony of Vocational Expert**

Ms. Melissa Fass-Karlin testified at plaintiff's February 12, 2010 hearing as a vocational expert.  (Tr. 36-41.) She classified the job of housemother (described by Ms. Fass-Karlin as a "case aide") as light, semi-skilled work, citing the U.S. Department of Labor, Dictionary of Occupational Titles. (Tr. 38.)  She classified the job of a receptionist as semi-skilled and sedentary, also citing the U.S. Department of Labor, Dictionary of Occupational Titles.  (Tr. 38-39.)  She testified that a hypothetical individual that could sit for six hours per day, stand or walk for two hours per day, carry ten pounds occasionally, and carry five pounds frequently, while avoiding humidity and respiratory irritants, could perform work as a receptionist but not a case aide.  (Tr. 39-40.)  Ms. Fass-Karlin also testified that an individual with the same above listed capacities but that could not carry more than five pounds

regularly would not be able to work as a receptionist.  (Tr.
40.)

Speaking about the plaintiff, the ALJ explained to Ms.
Fass-Karlin that her doctor's analysis limited her to lifting
five pounds and noted that she "gets symptoms" when sitting for
more than ten minutes.  (Tr. 40-41.)  With this information, Ms.
Fass-Karlin testified that "there would be no work" plaintiff
would be able to perform.  (Tr. 41.)

## DISCUSSION

Defendant argues that the Commissioner correctly
determined that plaintiff was not disabled because she has the
RFC to perform the full range of sedentary work and is capable
of performing past relevant work as a receptionist.  (*See* ECF
No. 11, Memorandum of Law in Support of Defendant's Motion for
Judgment on the Pleadings ("Def. Mem.") at 13-21.)  Plaintiff
argues that the ALJ's decision, adopted by the Commissioner, is
flawed because the ALJ:  (1) did not properly evaluate the
medical evidence provided by plaintiff's treating physician, Dr.
Pompa; (2) did not adequately fulfill his affirmative duty to
develop the medical record; (3) did not properly reconcile the
evidence to determine plaintiff's past relevant work; and (4)
did not properly evaluate the credibility of plaintiff's hearing
testimony and her complaints of severe pain and weakness and a
greatly reduced RFC.  (*See* ECF No. 13, Memorandum of Law in

Support of Plaintiff's Cross-Motion for Judgment on the Pleadings ("Pl. Mem.") at 9-20.)

In light of these alleged failures, plaintiff requests that this court reverse the decision of the Commissioner and grant a decision in favor of the plaintiff, or alternatively, remand the case for further development on the record. (*Id.* at 21, 29.) Defendant maintains that the ALJ properly considered the evidence and applied the regulations, there is substantial evidence in the record to support the ALJ's decision, and that plaintiff's arguments to the contrary are unavailing. (*See* ECF No. 14, Defendant's Reply Memorandum of Law in Further Support of his Motion for Judgment on the Pleadings, and in Opposition to Plaintiff's Cross-Motion for Judgment on the Pleadings ("Def. Reply").)

## IV. Standard of Review

"A district court may set aside the [ALJ's] determination that a claimant is not disabled only if the factual findings are not supported by substantial evidence or if the decision is based on legal error." *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008) (citations omitted) (internal quotation marks omitted). "Substantial evidence is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (quoting

*Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  An evaluation

of the "substantiality of evidence must also include that which

detracts from its weight."  *Williams ex rel. Williams v. Bowen*,

859 F.2d 255, 258 (2d Cir. 1988).  If there is substantial

evidence in the record to support the Commissioner's factual

findings, those findings are conclusive and must be upheld.  *See*

42 U.S.C. § 405(g).  Moreover, the reviewing court "may not

substitute its own judgment for that of the [ALJ], even if it

might justifiably have reached a different result upon a *de novo*

review."  *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991)

(quoting *Valente v. Sec'y of Health and Human Servs.*, 733 F.2d

1037, 1041 (2d Cir. 1984)).

**V.   Determining Whether a Claimant is Disabled**

A claimant is disabled under the Social Security Act

when unable "to engage in any substantial gainful activity by

reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has

lasted or can be expected to last for a continuous period of not

less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The impairment

must be of "such severity" that the claimant is "not only unable

to do [her] previous work but cannot, considering [her] age,

education and work experience, engage in any other kind of

substantial gainful work [that] exists in the national economy."

42 U.S.C. § 423(d)(2)(A).

The SSA has promulgated a five-step sequential analysis to determine whether the claimant's condition meets the Act's definition of disability:

> [I]f the Commissioner determines (1) that the claimant is not working,[4] (2) that he [or she] has a 'severe impairment,'[5] (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability,[6] and (4) that the claimant is not capable of continuing in his [or her] prior type of work,[7] the Commissioner must find [the claimant] disabled if (5) there is not another type of work that claimant can do.[8]

*Burgess*, 537 F.3d at 120 (citation omitted); *see* 20 C.F.R. § 404.1520(a)(4).

During this five-step process, the Commissioner must "consider the combined effect of all [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity to establish eligibility for Social Security benefits." *Burgin v.*

---

[4] Under the first step, if the claimant is currently engaged in "substantial gainful employment," the claimant is not disabled, regardless of the medical findings. 20 C.F.R. § 404.1520(b); *see id.* § 404.1520(a)(4)(i).

[5] Under the second step, the claimant must have "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities" in order to have a severe impairment. 20 C.F.R. § 404.1520(c); *see id.* § 404.1520(a)(4)(ii).

[6] Under the third step, if the claimant has an impairment that meets the duration requirement and is listed in Appendix 1 or is equal to a listed impairment, the claimant is *per se* disabled. 20 C.F.R. § 404.1520(d); *see id.* § 404.1520(a)(4)(iii).

[7] Under the fourth step, the claimant is not disabled if he or she can still do his or her "past relevant work." 20 C.F.R. § 404.1520(f); *see id.* § 404.1520(a)(4)(iv).

[8] Under the fifth step, the claimant may still be considered not disabled if he or she "can make an adjustment to other work" available in the national economy. 20 C.F.R. § 404.1520(g); *see id.* § 404.1520(a)(4)(v).

*Astrue*, 348 F. App'x 646, 647 (2d Cir. 2009) (summary order)

(alteration in original) (citing 20 C.F.R. § 404.1523).

Further, if the Commissioner "do[es] find a medically severe

combination of impairments, the combined impact of the

impairments will be considered throughout the disability

determination process." *Id.* (alteration in original) (citing 20

C.F.R. § 416.945(a)(2)).

In steps one through four of the sequential five-step

framework, the claimant bears the "general burden of proving

. . . disability." *Burgess*, 537 F.3d at 128. In step five, the

burden shifts from the claimant to the Commissioner, requiring

the Commissioner to show that in light of the claimant's RFC,

age, education, and work experience, the claimant is "able to

engage in gainful employment within the national economy."

*Sobolewski v. Apfel*, 985 F. Supp. 300, 310 (E.D.N.Y. 1997).

## VI. The ALJ's Disability Determination

Using the five-step sequential process to determine

whether a claimant is disabled as mandated by 20 C.F.R.

§ 404.1520(a)(4), the ALJ determined at step one that plaintiff

has not engaged in substantial gainful activity since her

alleged onset date. (Tr. 15.) At step two, the ALJ found that

plaintiff has severe impairments, including COPD, mitral valve

prolapse, and mild osteoarthritis of the hips. (*Id.*) At step

three, the ALJ found plaintiff to lack an impairment or

combination of impairments that meets or medically equals a listed impairment in Appendix 1 of the regulations that would conclusively require a disability determination. (*Id.*)

At step four, the ALJ found that plaintiff is not disabled, concluding that she has the RFC to perform the full range of sedentary work as long as she avoids concentrated exposure to respiratory irritants and climbing ladders, ropes, and scaffolds. (Tr. 15-19.) The ALJ then found that plaintiff was capable of performing her past relevant work as a receptionist, a sedentary semi-skilled job. (Tr. 19.) The ALJ also noted that the vocational expert who testified at the hearing classified plaintiff's past relevant work as a case aide as "light, semi-skilled." (*Id.*)

In deciding that plaintiff retained the RFC to perform the full range of sedentary work, with the limitations noted above, the ALJ accorded treating physician Dr. Pompa's opinion "little weight . . . because it is inconsistent with his treatment notes or any objective findings. Diagnostic results and specific treatment for many of the impairments reported by Dr. Pompa are not noted in his treatment records." (Tr. 18.) Additionally, the ALJ also gave "little weight" to the state examiner's opinion that plaintiff has the RFC for medium work because "the evidence substantiates greater limitations." (*Id.*)

Finally, although the ALJ recognized that plaintiff's medically determinable impairments could cause her symptoms, the ALJ found that the plaintiff's "statements concerning the intensity, persistence and limiting effects" of her symptoms were "not credible to the extent they are inconsistent with the [assessed RFC]." (Tr. 17.)

## VII. Analysis

### A. The ALJ's Evaluation of the Opinion of Plaintiff's Treating Physician

"Regardless of its source," the regulations require that "every medical opinion" in the administrative record be evaluated when determining whether a claimant is disabled under the Act. 20 C.F.R. §§ 404.1527(c), 416.927(c).

Under the Commissioner's regulations, the medical opinion of a treating source "on the issue(s) of the nature and severity of [the] impairment" will be given controlling weight if such opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see also Burgess*, 537 F.3d at 128. Medically acceptable clinical and laboratory diagnostic techniques include consideration of a "'patient's report of complaints, or history, [a]s an essential

16

diagnostic tool.'" *Green-Younger v. Barnhart*, 335 F.3d 99, 106-
07 (2d Cir. 2003) (citation omitted).

According to the Commissioner's regulations, the
opinions of treating physicians deserve controlling weight
because "'these sources are likely to be the medical
professionals most able to provide a detailed, longitudinal
picture of [the] medical impairment(s) and may bring a unique
perspective to the medical evidence that cannot be obtained from
the objective medical findings alone or from reports of
individual examinations . . . .'" *Balodis v. Leavitt*, 704 F.
Supp. 2d 255, 264 (E.D.N.Y. 2010) (quoting 20 C.F.R.
§§ 404.1527(c)(2), 416.927(c)(2)).  It also established,
however, that the less consistent a treating doctor's opinion is
with the record as a whole, the less weight it will be given.
*Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) (citing 20
C.F.R. § 404.1527(c)(4)).  Moreover, under the regulations,
opinions of non-treating and non-examining doctors can override
those of treating doctors so long as they are supported by
evidence in the record.  *Schisler v. Sullivan*, 3 F.3d 563, 568
(2d Cir. 1993) (citing 20 C.F.R. §§ 404.1527(e), 416.927(e)).

Where a treating physician's opinion regarding the
nature and severity of a claimant's disability is not afforded
"controlling" weight, the ALJ must "comprehensively set forth
[his or her] reasons for the weight assigned to a treating

physician's opinion." *Burgess*, 537 F.3d at 129 (quoting
*Halloran*, 362 F.3d at 33) (internal quotation marks omitted).
When declining to afford controlling weight to a treating
physician's opinion, the regulations require the ALJ to consider
the following factors in determining how much weight it should
receive: (1) the length of the treatment relationship and the
frequency of examination; (2) the nature and extent of the
treating relationship; (3) the supportability of the treating
source opinion; (4) the consistency of the opinion with the rest
of the record; (5) the specialization of the treating physician;
and (6) any other relevant factors. 20 C.F.R.
§§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6); *see Burgess*, 537 F.3d
at 129; *Snell*, 177 F.3d at 133.

        Although the SSA considers opinions from treating
physicians regarding the RFC and disability of a claimant, "the
final responsibility for deciding issues relating to disability
is reserved to the Commissioner," not to physicians. *Martin v.
Astrue*, 337 F. App'x 87, 89 (2d Cir. 2009) (summary order). The
source of an opinion on those matters is thus not given
"controlling weight" or "special significance" under the
regulations. *Arruda v. Comm'r of Soc. Sec.*, 363 F. App'x 93,
95-96 (2d Cir. 2010) (summary order); *see also* 20 C.F.R.
§§ 404.1527(d)(1), 416.927(d)(1) ("A statement by a medical
source that you are 'disabled' or 'unable to work' does not mean

that we will determine that you are disabled."); *Snell*, 177 F.3d at 133 ("A treating physician's statement that the claimant is disabled cannot itself be determinative."). In fact, "[t]he Commissioner is not required, nor even necessarily permitted, to accept any single opinion, even that of a treating physician, as dispositive on the determination of disability." *Francois v. Astrue*, No. 09-CV-6625, 2010 U.S. Dist. LEXIS 61456, at *17-18 (S.D.N.Y. June 18, 2010) (citing *Green-Younger*, 335 F.3d at 106). The ALJ, however, may not "arbitrarily substitute his own judgment for competent medical opinion." *Balasmo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) (citation omitted).

Despite the fact that the disability determination is reserved for the Commissioner, the Second Circuit has held that ALJs are not exempt "from their obligation, under *Schaal*[9] and [20 C.F.R.] § 404.1527[(c)](2), to explain why a treating physician's opinions are not being credited." *Snell*, 177 F.3d at 134 ("The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases, even - and perhaps especially - when those dispositions are unfavorable."); *see also* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give to your treating source's opinion"). An ALJ's "[f]ailure to provide

---

[9] *Schaal v. Apfel*, 134 F.3d 496 (2d Cir. 1998).

such ''good reasons' for not crediting the opinion of a
claimant's treating physician is a ground for remand.'"
*Burgess*, 537 F.3d at 129-130 (quoting *Snell*, 177 F.3d at 133-34
(remanding for a statement of the reasons why a treating
source's finding of disability was rejected by the ALJ)).  An
ALJ's failure to reconcile materially divergent RFC opinions of
medical sources is also a ground for remand.  *Caserto v.
Barnhart*, 309 F. Supp. 2d 435, 445 (E.D.N.Y. 2004); *see Ferraris
v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

        The medical records before the court demonstrate that
a treating relationship existed between the plaintiff and Dr.
Pompa, as Dr. Pompa treated plaintiff at least ten times between
July 2008 and January 2010 at varying intervals (Tr. 577-91),
and the ALJ himself acknowledged that Dr. Pompa was plaintiff's
treating physician (Tr. 18).  Here, remand is required because
the ALJ rejected the medical opinion and RFC determination of
treating physician Dr. Pompa without specifically setting forth
"good reasons" for doing so and without attempting to reconcile
Dr. Pompa's opinion and RFC determination with the conflicting
opinions and RFC determinations of the non-examining,
consultative physicians in the record.

Dr. Pompa found that plaintiff was unable to perform the full range of sedentary work.[10]  Specifically, Dr. Pompa found that plaintiff has symptoms when standing for short periods of time and sitting for more than ten minutes.  (Tr. 576.)  He found that her walking ability is severely limited and that she cannot bend, stoop, push, pull, or carry items without triggering pain and weakness in her lower extremities and back. (*Id.*)  Further, he found that plaintiff has numbness in her arms and hands resulting in an inability to carry or lift items over five pounds.  (*Id.*)  On the other hand, Drs. Ewald and Wells both found plaintiff could stand or walk for six hours per day and lift 50 pounds occasionally and 25 pounds frequently.  (Tr. 443, 448.)  Dr. Ewald additionally found that plaintiff could sit for six hours per day.  (Tr. 443.)

The opinion of plaintiff's treating physician is therefore in direct conflict with those of Drs. Ewald and Wells. By concluding that plaintiff could sit for six hours per day, stand and walk for two hours, and carry ten pounds occasionally, the ALJ only credited Dr. Ewald's finding that plaintiff could sit for six hours a day and discredited the other findings in Dr. Ewald's opinion as well as the entirety of the opinions of

---

[10]  As noted, in order to meet the exertional requirements to perform a full range of sedentary work, a person must be able to sit for approximately six hours total and stand or walk for about two hours in an eight-hour workday and lift no more than 10 pounds.  *See Rosa*, 168 F.3d at 78 n.3; *Perez*, 77 F.3d at 46; 20 C.F.R. § 404.1567(a).

Dr. Pompa and Dr. Wells without proper explanation. (Tr. 18-19.) Although the ALJ is not required to accept any single opinion - even that of a treating physician - as dispositive of the disability determination, the ALJ was required to explain why he chose not to give controlling weight to the plaintiff's treating physician's opinion, and to reconcile the conflicting RFC opinions of the doctors in the record.[11] *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).[12] The ALJ failed to do so in this case, however.

As to Dr. Pompa, the ALJ stated that he "[gave] little weight to Dr. Pompa's medical opinion because it is inconsistent with his treatment notes or any objective findings. Diagnostic results and specific treatment for many of the impairments reported by Dr. Pompa are not noted in his treatment records." (Tr. 18.) Other than these conclusory statements, the ALJ did not explain his reasons for giving Dr. Pompa's opinion "little weight" because the ALJ failed to specify the "treatment notes

[11] The Second Circuit in *Snell* made clear that the ALJ's obligation to give "good reasons" for the weight afforded to treating physicians on issues of disability and employability arises out of 20 C.F.R. § 404.1527(c)(2). *See Snell*, 177 F.3d at 133-34. Additionally, when not giving a treating physician's opinion controlling weight, the Second Circuit has stated that the ALJ "must consider" the factors articulated in 20 C.F.R. § 404.1527(c)(2). *Burgess*, 537 F.3d at 129.

[12] *See also* 20 C.F.R. §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii) ("Unless a treating source's opinion is given controlling weight, the administrative law judge *must* explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician, psychologist, or other medical specialist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us." (emphasis added)).

or any objective findings" that were inconsistent with Dr.
Pompa's opinion, and to reconcile Dr. Pompa's opinion with those
of the other physicians. *See Lopez-Tiru v. Astrue*, No. 09-CV-
1638(ARR), 2011 U.S. Dist. LEXIS 121880, at *11-12 (E.D.N.Y. May
5, 2011) (remanding case where ALJ failed to give controlling
weight to treating physician's opinion "after making several
conclusory statements").

Although the ALJ mentions "consistency" to be one
factor that he may use to grant less than controlling weight to
Dr. Pompa's opinion under 20 C.F.R. §§ 404.1527(c)(4),
416.927(c)(4), without more, this court cannot determine the
reasons why the ALJ failed to give plaintiff's treating
physician controlling weight. *See Williams v. Astrue*, No. 09-
CV-3997, 2010 U.S. Dist. LEXIS 130273, at *66-70 (E.D.N.Y. Dec.
9, 2010) (remanding case due to ALJ's failure to reconcile the
materially divergent RFC opinions of plaintiff's treating
physician and a non-examining medical expert); *Brandon v. Bowen,*
666 F. Supp. 604, 607 (S.D.N.Y. 1987) (remanding case where
"[t]he ALJ merely stated that the treating physician's
assessment was 'not consistent' with certain unspecified
findings in the medical records.  This statement of reasons is
insufficient to allow the Court to assess whether the treating
physician's opinion was properly rejected."); *see also Pratts v.
Chater*, 94 F.3d 34, 39 (2d Cir. 1996) (noting that "[r]emand is

appropriate where" the reviewing court is "'unable to fathom the ALJ's rationale in relation to the evidence in the record' without further 'findings or clearer explanation for the decision.'" (citation omitted)).

Indeed, here, the ALJ did not acknowledge the treating physician rule or make any reference to the factors he was required to consider under 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6) when determining what weight to give the treating physician's opinion. *See Kennedy v. Astrue*, 343 F. App'x 719, 721 (2d Cir. 2009) (summary order) ("Where an ALJ fails properly to acknowledge [the treating physician rule] or to provide 'good reasons' for the weight given to the treating physician's opinion, '[w]e do not hesitate to remand.'" (citation omitted)); *Balodis v. Leavitt*, 704 F. Supp. 2d 255, 267 (E.D.N.Y. 2010) (remanding case for ALJ's failure to apply treating physician rule because, *inter alia*, there was "no reference in the ALJ's decision to the various factors that must be considered in deciding what weight to give the opinion of a treating physician."); *Mohammad Sayedur Rahman v. Astrue*, No. 09-CV-82, 2009 U.S. Dist. LEXIS 101619, at *22-23 (E.D.N.Y. 2009) (remanding case because the "ALJ's minimal explanation for disregarding [the treating physician's] medical opinion does not adequately examine relevant factors typically considered in applying the treating physician rule . . . .").

On remand, the ALJ shall state his findings and
provide good reasons for assigning less than controlling weight
to Dr. Pompa's opinion, if still applicable, considering the
length, nature, and extent of the treatment relationship, the
frequency of examination, the degree to which Dr. Pompa's
opinion was consistent with the record as a whole, whether Dr.
Pompa was a specialist in an area of medicine that related to
one of plaintiff's impairments, and whether there were any other
factors that "support or contradict" Dr. Pompa's opinion. *See*
20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6).
Additionally, the ALJ shall specify which of the "diagnostic
results and specific treatment for many of the impairments
reported by Dr. Pompa" are not supported by his treatment
records and identify the treatment notes, objective findings,
and other evidence that are inconsistent with Dr. Pompa's
opinion.  (Tr. 18.)  Finally, the ALJ shall reconcile Dr.
Pompa's opinion with those of Drs. Ewald and Wells and other
evidence in the record, explaining what evidence he relied upon
to determine that plaintiff can perform the full range of
sedentary work.

**B.    The ALJ's Affirmative Duty to Develop the Medical
       Record**

   "'[B]ecause a hearing on disability benefits is a
nonadversarial proceeding, the ALJ generally has an affirmative

obligation to develop the administrative record.'" *Burgess*, 537
F.3d at 128 (quoting *Melville v. Apfel*, 198 F.3d 45, 51 (2d Cir.
1999)); *see* 20 C.F.R. § 702.338.  Remand may be required where
the ALJ fails to discharge his or her affirmative obligation to
develop the record when making a disability determination.  *See*
*Butts v. Barnhart*, 388 F.3d 377, 385-86 (2d Cir. 2004); *Pratts*,
94 F.3d at 37; *Echevarria v. Sec'y of Health & Human Servs.*, 685
F.2d 751, 755 (2d Cir. 1982).  The ALJ bears this duty whether
or not a claimant appears with representation.  *See Batista v.*
*Barnhart*, 326 F. Supp. 2d 345, 353 (E.D.N.Y. 2004) ("Although an
ALJ's obligation to develop the record is heightened where the
claimant appears *pro se*, the duty still exists even where the
claimant is represented by counsel or a paralegal." (citations
omitted)).

Thus, if an ALJ believes that a treating physician's
opinion lacks support or is internally inconsistent, he may not
discredit the opinion on this basis but must affirmatively seek
out clarifying information from the doctor.  *Clark v. Comm'r of*
*Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998) (finding that an
ALJ's obligation to develop the record in a hearing exists
independently from the claimant's obligation to present evidence
on his or her own behalf).  Moreover, a treating physician's
"failure to include [proper] support for the findings in his
report does not mean that such support does not exist; he might

26

not have provided this information in the report because he did not know that the ALJ would consider it critical to the disposition of the case."  *Id.* at 118; *Hilsdorf v. Comm'r of Soc. Sec.*, 724 F. Supp. 2d 330, 346 (E.D.N.Y. 2010); *see also* 20 C.F.R. §§ 404.1512(e)(1); 416.912(e)(1) ("We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques.").[13]

In deciding not to give controlling weight to Dr. Pompa's opinion, the ALJ relied, at least in part, on the fact that "[d]iagnostic results and specific treatment for many of the impairments reported by Dr[.] Pompa are not noted in his

---

[13] Effective March 26, 2012, the Commissioner amended 20 C.F.R. §§ 405.1512 and 416.912 to remove this former paragraph (e) and the duty it imposed on ALJs to re-contact a disability claimant's treating physician under certain circumstances.  *See* How We Collect and Consider Evidence of Disability, 77 Fed. Reg. 10,651 (Feb. 23, 2012).  The rationale underlying this modification reflected the fact that, "[d]epending on the nature of the inconsistency or insufficiency [in the evidence provided by the treating source], there may be other, more appropriate sources from whom we could obtain the information we need."  *Id.* at 10,651.

The SSA has stated that the modification does not, however, "alter an adjudicator's obligations" and is consistent with section 223(d)(5)(B) of the Social Security Act, *id.* at 10,652, which requires the Commissioner to "make every reasonable effort to obtain from the individual's treating physician . . . all medical evidence, including diagnostic test, necessary in order to properly make such determination, prior to evaluating medical evidence obtained from any other source on a consultative basis."  42 U.S.C. § 423(d)(5)(B).  Here, we apply and reference the version of §§ 404.1512(e) and 416.912(e) in effect when the ALJ adjudicated plaintiff's disability claim.  *See Lowry v. Astrue*, No. 11-1515-cv, 2012 U.S. App. LEXIS 6933, at *7 n.2 (2d Cir. Apr. 6, 2012).

treatment records." (Tr. 18.) As plaintiff correctly argues
(Pl. Mem. at 12-13), under the regulations the ALJ must
affirmatively seek out clarifying information from physicians
whose opinions the ALJ discounts if there appears to be a gap in
the administrative record. *See Hartnett v. Apfel*, 21 F. Supp.
2d 217, 221 (E.D.N.Y. 1998) ("[I]f an ALJ perceives
inconsistencies in a treating physician's reports, the ALJ bears
an affirmative duty to seek out more information from the
treating physician and to develop the administrative record
accordingly.").

At the February 12, 2010 hearing, the ALJ requested
that plaintiff's counsel submit Dr. Pompa's notes (Tr. 42), and
in a cover letter dated February 17, 2010, plaintiff's counsel
wrote that he "enclosed Dr. Pompa's entire patient file for Ms.
Cabassa." (Tr. 575.) It thus appears that all of Dr. Pompa's
treatment notes were before the ALJ at the time of his decision.
Nevertheless, given that the ALJ relied on the lack of support
in Dr. Pompa's treatment notes in affording his opinion "little
weight," the ALJ was required to seek out clarifying information
from an appropriate source, which may include seeking additional
medical records or Dr. Pompa's testimony as to the bases for his
conclusions. *See Schaal*, 134 F.3d at 505 ("[E]ven if the
[treating physician's] clinical findings were inadequate, it was

the ALJ's duty to seek additional information from [the treating physician] *sua sponte*.").

The ALJ did not specify in his opinion whether he or plaintiff's attorney actually requested additional information and the response, if such requests were made.  This information is necessary to determine whether the ALJ discharged his duty to affirmatively seek out clarifying information where, as here, the record is void of treatment records supporting Dr. Pompa's opinion.  *See, e.g.*, *Jeffcoat v. Astrue*, No. 09-CV-5276, 2010 U.S. Dist. LEXIS 79630, at *43-44 (E.D.N.Y. Aug. 6, 2010) (remanding where ALJ indicated that he would request a report from the treating physician, but the ALJ does not address whether he actually requested the treatment records and, if such a request was made, what response was received).  Thus, the ALJ erred by rejecting the opinion of Dr. Pompa for lack of support without establishing that he satisfied his obligation to affirmatively develop the record.

On remand, to the extent that the ALJ found a lack of support in the record for Dr. Pompa's conclusions, the ALJ shall affirmatively develop the record as necessary to determine whether there is additional support for Dr. Pompa's diagnoses and, if so, obtain and discuss the evidence.  *See Clark*, 143 F.3d at 118.  If there is no additional support for Dr. Pompa's opinion, the ALJ shall state the same and explain, as discussed

above, which "diagnostic results and specific treatment" lack
support in the treatment records. (Tr. 18.)

### C. The ALJ's Findings Regarding Plaintiff's Past Relevant Work

At step four in the analysis, the ALJ must consider
the claimant's past relevant work. 20 C.F.R.
§ 404.1520(a)(4)(iv). Past relevant work is defined as "work
that [the claimant has] done within the past 15 years, that was
substantial gainful activity, and that lasted long enough for
[the claimant] to learn to do it." 20 C.F.R. § 404.1560(b)(1);
see *Hall v. Astrue*, No. 06-CV-1000, 2009 U.S. Dist. LEXIS 66498,
at *23 (E.D.N.Y. July 31, 2009) (defining "past relevant work"
as "work performed within the last fifteen years or fifteen
years prior to the date that disability was established")
(citing 20 C.F.R. § 404.1565)). Therefore, any work that
plaintiff performed after August 31, 1993, fifteen years prior
to the alleged disability onset date, may constitute "past
relevant work." If plaintiff's prior employment does not
constitute "past relevant work," such employment cannot be
considered in the ALJ's determination.

Here, the ALJ concluded that plaintiff could perform
what he determined to be her past relevant work as a
receptionist. (Tr. 19.) According to the ALJ (Tr. 19) and a
Disability Report Form (Tr. 122), plaintiff was a receptionist

for a media company from 1993 to 2004, which would qualify as past relevant work.[14]  There is, however, contradictory evidence in the record that the ALJ failed to consider.  First, the 2010 FICA report included in the record shows plaintiff's earnings from 1995 to 2010 and lists eighteen different employers from 1995 to 2004.  (Tr. 107-15.)  While the record does not include plaintiff's employers for the years 1993 and 1994, this list of eighteen different employers between 1995 and 2004 appears to be inconsistent with information from the Disability Report Form, relied on by the ALJ, which states that plaintiff worked for a media company from 1993 to 2004 and implies that plaintiff did not work for more than one employer during that time.  (Tr. 122.)

Additionally, plaintiff's own testimony at the February 12, 2010 hearing contradicts the ALJ's finding.  When asked by the ALJ when she worked as a receptionist, the plaintiff replied, "It was before '92; maybe '90 or '89 I worked as a receptionist."  (Tr. 27-28.)  In the ALJ's reexamination of plaintiff, plaintiff stated she knew when she was a receptionist because it was before she and her husband moved to California,

---

[14] Plaintiff claims that she did not fill out this form, describing it as a form "filled out by a nameless bureaucrat at a social security office that was either too tired or too lazy to take an accurate work history."  (Pl. Mem. at 16.)  According to the defendant, a person named "J. Leone" filled out the form after a face-to-face interview with the plaintiff on October 21, 2008.  (Def. Reply at 4.)  In the administrative record, the form comes after a similar form in the record completed by a "J. Leone."  (Tr. 116-19.)

saying, "We left in '92 and I worked [as a receptionist] before that." (Tr. 36.) Furthermore, when asking plaintiff about her work history, the ALJ only inquired, and thus the plaintiff only responded, about (1) "the last time [plaintiff] worked," which was her job as a housemother (Tr. 26-27), and (2) plaintiff's job as a receptionist, which plaintiff said she held prior to 1992. (Tr. 27-28.) The ALJ did not inquire about any other jobs plaintiff may have held within the last fifteen years. (*See* Tr. 26-33, 36.) The record is thus incomplete as to plaintiff's positions, dates of employment, and the specific tasks she performed at the eighteen different employers listed in the FICA Report during the past 15 years. (Tr. 107-15.) In the ALJ's opinion, instead of reconciling this information or developing the record further, the ALJ relied on the Disability Report Form as the sole evidence of plaintiff's past relevant work and did not mention any of the conflicting evidence referenced above. (Tr. 19.)[15]

Accordingly, the court finds that the ALJ's determination that plaintiff's work as a receptionist constitutes past relevant work is not supported by substantial

---

[15] During the February 12, 2012 hearing, while the ALJ was questioning the vocational expert, the ALJ explicitly acknowledged that "[a]ccording to the claimant, last time she worked as a receptionist was more than 15 years ago." (Tr. 41.) In response, the vocational expert stated "then it's not considered . . . even to be past relevant work." (*Id.*) Without explaining, the ALJ then stated "that's my determination" (*id.*), presumably confirming to the vocational expert that he was finding that the plaintiff's work as a receptionist was past relevant work. The ALJ does not, however, mention plaintiff's conflicting testimony in his opinion.

evidence, but instead is based on incomplete and conflicting evidence. The ALJ should have probed the plaintiff further during the hearing regarding her positions, approximate dates of employment, and the tasks she performed during her past employment in light of the FICA Report or ordered plaintiff's lawyer or others to provide more information about plaintiff's work history.[16] The court thus remands the case for further development of plaintiff's work history since August 31, 1993. *See Rivera v. Barnhart*, 379 F. Supp. 2d 599, 605-06 (S.D.N.Y. 2005) (remanding case for development of work record where ALJ failed to thoroughly question plaintiff about his work history). In this instance, development of the work record is as critical as development of the medical record because the ALJ's finding that plaintiff's work as a receptionist constitutes past relevant work was a determinative factor in the ALJ's denial of plaintiff's disability claim.

---

[16] *See* 20 C.F.R. § 404.1565(b) ("[W]e will ask you about the work you have done in the past. If you cannot give us all of the information we need, we will try, with your permission, to get it from your employer or other person who knows about your work, such as a member of your family or a co-worker. When we need to consider your work experience to decide whether you are able to do work that is different from what you have done in the past, we will ask you to tell us about all of the jobs you have had in the last 15 years. You must tell us the dates you worked, all of the duties you did, and any tools, machinery, and equipment you used. We will need to know about the amount of walking, standing, sitting, lifting and carrying you did during the work day, as well as any other physical or mental duties of your job.").

**D.   The ALJ's Evaluation of Plaintiff's Credibility**

The ALJ must follow a two-step process to evaluate a claimant's assertions of pain and other symptoms.  First, the ALJ must consider whether the claimant has a medically-determinable impairment which could reasonably be expected to produce the pain or symptoms alleged by the claimant.  20 C.F.R. §§ 404.1529(b), 416.929(b).  This requirement "stems from the fact that subjective assertions of pain *alone* cannot ground a finding of disability."  *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citing 20 C.F.R. § 1529(a)).

Second, if the claimant does suffer from an impairment that could reasonably be expected to produce pain or symptoms alleged by the plaintiff, the ALJ "must then evaluate the intensity and persistence of [the claimant's] symptoms so that [the ALJ] can determine how [the claimant's] symptoms limit [her] capacity for work."  20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1).  If the claimant offers statements about pain or other symptoms that are not substantiated by the objective medical evidence, "the ALJ must engage in a credibility inquiry."  *Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010) (summary order) (citing 20 C.F.R. § 404.1529(c)(3)); (Tr.

16).[17] "An ALJ's finding that a witness lacks credibility must

be 'set forth with sufficient specificity to permit intelligible

plenary review of the record.'" *Morrison v. Astrue*, 08-CV-2048,

2010 U.S. Dist. LEXIS 115190, at *12 (E.D.N.Y. Oct. 27, 2010)

(quoting *Williams*, 859 F.2d at 261); *see also Escalante v.*

*Astrue*, No. 11 Civ. 375, 2012 U.S. Dist. LEXIS 879, at *23

(S.D.N.Y. Jan. 4, 2012) ("Conclusory findings of a lack of

credibility will not suffice; rather, an ALJ's decision 'must

contain specific reasons for the finding on credibility,

supported by the evidence in the case record, and must be

sufficiently specific to make clear to the individual and to any

subsequent reviewers the weight the adjudicator gave to the

individual's statements and the reasons for that weight.'"

(quoting Evaluation of Symptoms in Disability Claims:  Assessing

the Credibility of an Individual's Statements, 61 Fed. Reg.

34,483, 34,484 (July 2, 1996))).

        Following this two-step framework, the ALJ here found

that "claimant's medically determinable impairments could

reasonably be expected to cause the alleged symptoms; however,

---

[17]    "That credibility inquiry implicates seven factors to be
considered, including: (1) the claimant's daily activities; (2) the location,
duration, frequency, and intensity of the pain; (3) precipitating and
aggravating factors; (4) the type, dosage, effectiveness, and side effects of
any medications taken to alleviate the pain; (5) any treatment, other than
medication, that the claimant has received; (6) any other measures that the
claimant employs to relieve the pain; and (7) other factors concerning the
claimant's functional limitations and restrictions as a result of the pain."
*Meadors*, 370 F. App'x at 184 n.1 (quoting 20 C.F.R. § 404.1529(c)(3)(i)-
(vii)).

the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. 17.) Plaintiff argues that, once a medically determinable impairment was found to exist, the ALJ erred by not evaluating plaintiff's pain allegations as the primary basis for disability and not considering pain as a factor in the overall determination of whether claimant was disabled. (Pl. Mem. at 19.) Furthermore, plaintiff argues that the ALJ erred by not making explicit credibility findings supported by substantial evidence. (*Id.*)

The Second Circuit has recognized that "[e]vidence of pain is an important element in the adjudication of [SSD] and SSI claims, and must be thoroughly considered in calculating the RFC of a claimant." *Meadors*, 370 F. App'x at 183. "'A claimant who alleges a disability based on the subjective experience of pain need not adduce direct medical evidence confirming the extent of the pain, but [instead] medical signs and laboratory findings which show that the claimant has a medical impairment which could reasonably be expected to produce the pain.'" *Id.* at 184 (quoting *Snell,* 177 F.3d at 135). Although the ALJ found that there was a "medically determinable impairment that could reasonably be expected to cause the alleged symptoms" (Tr. 17) and that the medical evidence substantiates leg pain (Tr. 18),

the ALJ did not specify how plaintiff's subjective experience of pain factored into his determination of plaintiff's RFC.

Furthermore, in determining that the plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not credible, the ALJ erred by not explicitly addressing the factors enumerated in 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) and by failing to give specific reasons for his credibility determination based on those factors. Instead, the ALJ simply summarized plaintiff's daily activities, symptoms, and the medical evidence. (Tr. 16-18.) Although the defendant correctly notes that the ALJ's medical summary does address evidence related to some of the relevant factors (Def. Reply at 5), such as plaintiff's daily activities, the ALJ did not address or explain how the duration, frequency, or intensity of plaintiff's symptoms, the precipitating and aggravating factors regarding her symptoms, or the medications she takes factored into his credibility assessment. *See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). Indeed, the ALJ does not make a single statement regarding how any of the relevant factors affected his evaluation of plaintiff's credibility.

Plaintiff's testimony also appears to contradict the ALJ's finding that plaintiff "is independent in her personal care." (Tr. 18.) In support of this conclusion, the ALJ states that the plaintiff's daughter cooks for her but that plaintiff

does not express an inability to cook, and the facts that plaintiff does "very little house work and shops with her daughter," "goes out at least once daily," can go out alone, and has hobbies including walking, watching television, and reading. (*Id.*) Several of these facts tend to support the opposite conclusion - that plaintiff leads a life dependent on her daughter and her daughter's family. Indeed, as plaintiff testified, (1) she lives in the downstairs of her daughter's house and her daughter and son-in-law "help quite a bit because they're right upstairs"; (2) she typically spends her day laying around the house, watching TV, reading a book, and does not "do too much"; (3) she cannot drive because she gets dizzy and feels weak; (4) her daughter's family cooks and brings food downstairs to her; and (5) although she can bathe and dress herself, the plaintiff states that she is "out of breath a lot" and that these tasks are a "struggle." (Tr. 30-31.) The record also reflects that plaintiff only goes shopping with her daughter once a week and that when plaintiff does walk, (1) she must stop and rest after walking one block because her legs hurt and she is out of breath, (2) she must rest for one-half hour before continuing to walk, and (3) she has not been walking lately. (Tr. 133-35.)[18]

---

[18] The court also notes that there is contradictory evidence in the record regarding the ALJ's finding that plaintiff is an "active smoker." (Tr. 18). Indeed, both a medical progress note dated November 6, 2008 (Tr.

The Second Circuit has stated on numerous occasions that "[a] claimant need not be an invalid to be found disabled under the Social Security Act." *See, e.g.*, *Meadors*, 370 F. App'x at 185 n.2 (citation omitted). While the ALJ "must, of course, assess the credibility of [plaintiff's] testimony along with the remainder of the record," on remand, the ALJ "should be mindful to consider each of the factors set forth in § 404.1529(c)(3)" and shall keep in mind that he "'cannot simply selectively choose evidence in the record that supports his conclusions'. . . [or] mis-characterize a claimant's testimony or afford inordinate weight to a single factor" under §§ 404.1529(c)(3) and 416.929(c)(3). *Id.* (quoting *Gecevic v. Sec'y of Health and Human Servs.*, 882 F. Supp. 278, 286 (E.D.N.Y. 1995)); *see also Hilsdorf*, 724 F. Supp. 2d at 351-52 (finding that the mere fact that plaintiff engaged in activities such as walking two to three blocks, shopping for medications occasionally, and driving a car were insufficient to suggest that he "'engaged in any of these activities for sustained periods comparable to those required to hold [even] a sedentary job'" (citation omitted)).

Accordingly, on remand, the ALJ shall (1) consider plaintiff's subjective experience of pain in determining

<hr>

370) and a History and Physical Report dated December 20, 2007 (Tr. 425) state that plaintiff quit smoking in 1992. There was no testimony elicited at the hearing that plaintiff currently smokes.

plaintiff's RFC; (2) re-assess plaintiff's credibility in light of any new evidence in the record; and (3) provide specific reasons for his finding on plaintiff's credibility, supported by evidence in the case record, including a careful consideration of all of the factors identified in 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3).

**CONCLUSION**

For the foregoing reasons, the court denies both defendant's motion for judgment on the pleadings and plaintiff's cross-motion for judgment on the pleadings and remands this case for further proceedings consistent with this opinion. Specifically, the ALJ should:

(1) Affirmatively seek clarifying and additional information and explanations from Dr. Pompa or any other appropriate source where he found inconsistencies or gaps within the record;

(2) Review the totality of the evidence in the record, including any new evidence, and, if he declines to afford Dr. Pompa's opinion controlling weight, provide a clear and explicit statement of the "good reasons" for the weight given to the opinion of Dr. Pompa in accordance with the factors listed in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6), and he shall also reconcile Dr. Pompa's RFC determination with the

opinions of nonexamining sources Drs. Ewald and Wells
as well as other evidence in the record in order to
adequately explain the ALJ's RFC determination;

(3)  Obtain additional information about plaintiff's past
work history since August 31, 1993, including but not
limited to plaintiff's positions, approximate dates of
employment, and the specific tasks she performed at
the employers listed in the 2010 FICA report (Tr. 107-
15), *see* 20 C.F.R. § 404.1565(b), and appropriately
reconcile the contradictory evidence to determine
plaintiff's past relevant work;

(4)  If further investigation of plaintiff's work history
reveals past relevant work other than receptionist and
housemother, obtain new testimony from a vocational
expert on whether, based on substantial evidence in
the record and an accurate reflection of plaintiff's
limitations and capabilities, plaintiff retains the
ability to perform that past relevant work;

(5)  Re-assess his determination of plaintiff's RFC in
light of all of the evidence, including a
consideration of plaintiff's subjective experience of
pain, and explain how plaintiff's subjective
experience of pain factored into the RFC
determination;

(6) Give specific reasons for the credibility assigned to plaintiff's statements concerning the intensity, persistence, and limiting effects of her pain and other symptoms, taking into account the relevant factors enumerated in 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3), and set forth his determination with sufficient specificity so that the court can determine whether the credibility determination is supported by substantial evidence; and

(7) If plaintiff is found to be unable to perform any of her past relevant work, proceed to step five of the disability analysis and determine whether plaintiff, after considering her RFC, age, education, and work experience, can engage in any other kind of substantial gainful work that exists in the national economy. *See* 20 C.F.R. §§ 404.1520(g); 416.920(g).

The Clerk of the Court is respectfully requested to close the case.

**SO ORDERED.**

Dated    June 13, 2012
         Brooklyn, New York

                                          /s/
                              KIYO A. MATSUMOTO
                              United States District Judge
                              Eastern District of New York